# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-0990V
UNPUBLISHED

| | |
|---|---|
| BARBARA STOLIKER,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: August 7, 2020<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.

*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION AWARDING DAMAGES**[1]

On July 21, 2017, Barbara Stoliker filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of an influenza ("flu") vaccination administered on September 30, 2014. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, **I find that Petitioner is entitled to an award of damages in the amount** $121,119.77, **representing compensation in the amount of** $120,000.00 **for actual pain and suffering and** $1,119.77 **for past unreimbursable expenses.**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.       Relevant Procedural History[3]

As noted, this case was initiated in 2017. On August 27, 2018, Respondent filed a Rule 4(c) report opposing compensation because there was not preponderant evidence that Petitioner received her vaccination in the right arm or that onset of her shoulder injury was within 48 hours of vaccination. ECF 47 at 5. Respondent also filed a motion for a limited factual ruling to determine the arm in which Petitioner received her flu vaccination. ECF 49. On November 9, 2018, former Chief Special Master Dorsey (to whom the case was assigned at the time)[4] issued a fact ruling finding that Petitioner's flu vaccination was administered in her right arm, and that onset of her condition occurred within 48 hours. ECF 52. Respondent subsequently filed an amended Rule 4(c) report stating that "based on the record as it now stands . . . [R]espondent does not dispute that [P]etitioner has satisfied all legal prerequisites for compensation under the Act." ECF 54. A ruling finding Petitioner entitled to compensation was issued on December 11, 2018. ECF 56.

Shortly thereafter, Petitioner filed a motion to stay proceedings due to upcoming shoulder surgery. ECF 63. After the stay was lifted, in June 2019, the parties attempted to informally resolve the issue of damages but subsequently reported an impasse on the amount of pain and suffering to be awarded (the sole disputed damages issue to be resolved). ECF 72. After giving the parties an opportunity to file written briefs on this issue, I scheduled this matter for an expedited hearing and ruling based upon all the evidence filed to date and the parties' briefing. ECF 91. The hearing was held on July 31, 2020.[5]

In her brief, Petitioner requests that I award her $170,000.00 for past and future pain and suffering. ECF 83. Respondent proposes that I award the lesser amount of $110,000.00. ECF 86. The parties do not dispute that $1,119.77 in actual unreimbursable expenses should also be awarded.

## II.       Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] I adopt the comprehensive procedural history set forth in ECF 52.

[4] I was appointed Chief Special Master on October 1, 2019. This case was reassigned to me that same day.

[5] The transcript from the hearing has yet to be filed, but it is incorporated by reference herein

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Prior pain and suffering awards in comparable cases also bear on the resolution herein. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.    Appropriate Compensation in this SIRVA Case

In this case, awareness of the injury is not disputed. The record reflects that at all times, Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In so doing, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on July 31, 2020. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience in adjudicating those cases.[7] However, I ultimately base my determination on the circumstances of this case.

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[7] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.*, No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.*, No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.*, No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

Petitioner's SIRVA, plus her related treatment and recovery, was consistent with that experienced by many other petitioners who also required surgery after their injury. Approximately two weeks after receiving the flu vaccine on September 30, 2014, Petitioner presented to her primary care provider (PCP) with complaints of right shoulder pain "since receiving flu shot." Ex 2 at 12. Physical examination (PE) revealed tenderness to palpation (TTP) in the posterior deltoid. *Id*. After three months, Petitioner's pain had not resolved, and she was referred for physical therapy (PT), which she began in January 2015. Ex 2 at 37. During six PT sessions from January to March 2015, Petitioner displayed "moderate weakness," "deficits" in her range of motion (ROM), and TTP. Ex 2 at 37, 39 and Ex 4 at 121-131. Petitioner was discharged from PT secondary to failure to schedule future appointments. Ex 4 at 132.

Because Petitioner continued to complain of right shoulder pain, she underwent an MRI in June 2015, which showed findings of (1) thinning of the infraspinatus tendon and (2) a possible partial undersurface tear of the infraspinatus. Ex 2 at 26. Petitioner was subsequently referred to an orthopedist, Dr. Thomas Wu. At Petitioner's initial appointment on November 30, 2015, PE revealed slightly decreased strength and positive impingement sign. Ex 3 at 2. She was diagnosed with a rotator cuff tear, but Dr. Wu reported that Petitioner did "not feel that her symptoms [we]re significant enough for [a cortisone injection or surgery]." *Id*.

The record then reflects an almost three-year gap in treatment for Petitioner's shoulder – and this gap bears on the magnitude of pain and suffering to be awarded in this case.[8] On July 18, 2018, Petitioner reported right shoulder pain during an appointment with her PCP, and she was referred to another orthopedist, Dr. Craig Zeman. Ex 9 and Ex 10 at 4. Examination by Dr. Zeman on July 20, 2018 revealed decreased ROM, TTP, and positive impingement, and Petitioner was diagnosed with bursitis. Ex 9 at 11-13. These records do not explain the reason for this delay in treatment.

Dr. Zeman subsequently performed a corticosteroid injection into the acromioclavicular (AC) joint and subacromial space in September 2018.[9] Ex 9 at 6. Petitioner also underwent an MRI arthrogram of the right shoulder in February 2019, which showed mild to moderate tendinosis with a small articular surface tear of the distal infraspinatus.[10] Ex 11 at 6.

---

[8] Petitioner occasionally visited her PCP during this time but did not complain of shoulder pain at these appointments. *See* Ex 2, Ex 5, and Ex 10.

[9] Petitioner alleges that she had a second corticosteroid injection in December 2018; however, a detailed review of the notes from the December appointment reflect that Dr. Zemen is referencing Petitioner's history of receiving an injection in September 2018. There is no indication that Dr. Zemen performed a second injection at the December 2018 appointment. Ex 11 at 1-4.

[10] The MRI also showed osteoarthritis of the AC joint. Neither Petitioner nor Petitioner's physicians have attributed Petitioner's arthritis to her SIRVA. *See, e.g.*, Ex 11 at 40.

One month later, Petitioner underwent shoulder surgery.[11] Ex 11 at 19. Petitioner subsequently attended nine post-surgical PT sessions and was discharged in May 2019, when she reported she "[was] doing well." *Id* at 41. At follow-up visits with Dr. Zemen in May and December 2019, PE did show TTP, slightly decreased strength, and positive impingement; however, she had resumed physical activities. *Id*. at 38 and Ex 13 at 1-2. She returned to Dr. Zemen in January 2020 after experiencing a flare of her symptoms while swimming. Ex 15 at 1. However, these symptoms subsided over the course of a week and Petitioner has received no further treatment since February 2020. Ex 15.

In her affidavits, Petitioner alleges that she spent multiple years in pain and lives in fear that her pain will return. Ex 6, Ex 14, and Ex 16. Prior to surgery, she had difficulty getting dressed and using the computer, was unable to swim or otherwise exercise, and could not lift her infant grandson. *Id*. She also reports that she was only able to sleep on her left side for five years, which has changed the physical appearance of her face. *Id*.

As I informed the parties during the expedited hearing,[12] the question in this case is not whether Petitioner is entitled to *any* compensation for her pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (acknowledging that in this case, the parties' respective positions reasonably "frame" high and low potential awards), each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Ms. Stoliker's personal circumstances.

Overall, I find that the proper pain and suffering award for this case should fall somewhere above the median amount typically awarded in SIRVA cases that result in surgery. Ms. Stoliker's pain and suffering were overall more significant than most, but not so egregious as to justify an award at the level proposed by Petitioner.

Petitioner argues that her case is comparable to *Reed*, where the petitioner was awarded $160,000.00 in pain and suffering.[13] However, while the facts in *Reed* are analogous to Petitioner's case (mainly in that both petitioners experienced improvement

---

[11] Specifically, arthroscopy with excision of the distal end of the clavicle, excision of the os acromiale, debridement of the glenohumeral joint, subacromial decompression, and partial acromioplasty. Ex 11 at 19.

[12] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated July 31, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited July 9, 2020).

[13] *Reed v. Sec'y of Health & Human Servs*., No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019).

after surgery), Ms. Reed rated her pain as 6-9/10 for six months, whereas Petitioner's symptoms were consistently described as mild to moderate. Furthermore, Ms. Reed displayed severely limited ROM and attended more than 30 sessions of PT over 12 months, while Petitioner attended only 15 sessions over five months. Ms. Reed also continued to see a pain management physician two-and-a-half years after her surgery. Petitioner, by contrast, was only taking non-steroidal anti-inflammatory medications as needed within six months of her surgery. Petitioner also alleges that her case is similar to *Reed* because both petitioners found their ability to perform childcare limited by their injury – but the cases are not truly comparable on this issue. As previously noted, Petitioner was unable to lift and carry her infant grandson, while Ms. Reed was a single mother to an eight-year-old.

Another factor suggesting that the pain and suffering award herein should be less than demanded by Petitioner is the significant, 3.5-year gap in her treatment, since it suggests an injury mild enough to tolerate for a long period of time. Treatment gaps are "a relevant consideration in determining the degree of Petitioner's pain and suffering." *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018). Petitioner did not complain of shoulder pain from December 2015 to mid-July 2018, despite opportunities to do so at various visits to her PCP. She also declined cortisone injections and surgery when offered by Dr. Wu in November 2015.

Petitioner boldly asserts the contrary, arguing that the treatment gap actually supports a *higher* award than in *Reed*, because she lived with the pain far longer (given that the petitioner in *Reed* underwent surgery within six months of injury). However, this argument is facially unpersuasive. The fact that Petitioner's injury did not merit more invasive treatment on a shorter timeframe undercuts her allegations of its severity, and therefore supports a lesser pain and suffering award than Petitioner requests.

Respondent, by contrast, references *Knudson*[14] in his brief to support a lower award, but it too presents inapposite facts. The petitioner's pain in that case had virtually resolved after only seven months. Even discounting Petitioner's gap in treatment, she received active treatment for approximately two years total, and her pain and suffering award should account for that time, even if treatment was voluntarily delayed.

In actuality, the factual circumstances in Petitioner's case are more similar to those in *Wallace*.[15] As with Petitioner, the *Wallace* petitioner received active treatment for variable symptoms over the course of approximately two years. He had two cortisone injections and attended multiple courses of physical therapy, and he also experienced significant improvement after surgery. Additionally, while the petitioner in *Cooper*[16] did

---

[14] *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov 7, 2018) (awarding $110,000.00 for pain and suffering).

[15] *Wallace v. Sec'y of Health & Human Servs.*, No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019) (awarding $125,000.00 in pain and suffering).

[16] *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181, at *13 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 in pain and suffering).

not undergo surgery, the court found that Ms. Cooper's opting for conservative treatment (as Petitioner did in 2015) and treatment gaps justified reducing her award for pain and suffering. The same approach is justified under the facts of Ms. Stoliker's case.

Accordingly, I find an award of $120,000.00 is appropriate for Petitioner's pain and suffering.

### IV.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $120,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[17] I also find that Petitioner is entitled to $1,119.77 in actual unreimbursable expenses.**

Accordingly, **I award Petitioner a lump sum payment of $121,119.77 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[18]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[17] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.